ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
MAY 27 2015
CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 4:15-CR-098-Y |
| STEVEN E. FISACKERLY (01) | |

## FACTUAL RESUME

INFORMATION

    Count One - Mail Fraud, in violation of 18 U.S.C. § 1341.

PLEA:

    Count One - Mail Fraud, in violation of 18 U.S.C. § 1341.

PENALTY:

    The penalties the Court can impose include:

    a.    imprisonment for a period not more than 20 years;

    b.    a fine not to exceed $250,000, or twice the amount of criminally derived property involved in the transaction(s);

    c.    a term of supervised release of not more than three years, which may be mandatory under the law and will follow any term of imprisonment. If the defendant violates the conditions of supervised release, the defendant could be imprisoned for all or part of the term of supervised release, and multiple revocations of supervised release may result in a term of imprisonment that exceeds the maximum term of supervised release;

    d.    a mandatory special assessment of $100;

e. as defendant is charged with a scheme to defraud, restitution to victims or to the community, may be mandatory under the law, and may include restitution arising from all relevant conduct, not limited to that arising from the offense of conviction alone; and

f. costs of incarceration and supervision.

## ELEMENTS OF THE OFFENSE:

In order to find the defendant guilty of the charged offense of mail fraud in violation of 18 U.S.C. § 1341, a jury would have to be convinced that the government proved each of the following beyond a reasonable doubt:

First: That the defendant knowingly devised a scheme to defraud as set out in the Information;

Second: That the defendant acted with a specific intent to defraud;

Third: That the scheme to defraud employed false material representations; and

Fourth: That the defendant caused any matter or thing to be sent or delivered through a private interstate carrier for the purpose of executing the scheme.

## STIPULATED FACTS:

XTO Energy, Inc. (XTO), headquartered in Fort Worth, Texas, is engaged in, among other things, the acquisition, development, exploration, and production of oil and natural gas in the United States. Founded in 1986, it merged with Exxon Mobile Corporation in 2010. Defendant **Steven E. Fisackerly** worked for XTO in its Fort Worth offices from September 2008, until March 2012, as an XTO Landman assigned to the Marcellus Shale wells in West Virginia.

A Landman is primarily responsible for all surface and mineral land-related matters for his assigned area. Among other things, a Landman drafts, negotiates, and administers oil and gas leases, amendments, unit designations, assignments, domestic gas use agreements, surface leases, damage agreements, purchase and sale agreements, and similar documents, all related to oil and gas exploration.

A Field Landman conducts preliminary courthouse research in an assigned area to determine ownership of oil and gas rights, and contacts the owner(s) to negotiate and execute the terms of an oil and gas lease (OGL). Once the owner executes the OGL, the Field Landman has the owner sign an order of payment and W-9 acknowledging terms of payment and requesting a tax identification number. The Field Landman then prepares an XTO lease packet, including a plat of the property and ownership documents, and mails the packet to XTO in Fort Worth, where an XTO Landman reviews the lease packet.

The XTO Landman provides the required paperwork to XTO management for company execution and notarization. Afterwards, the XTO Land Department mails the original OGLs back to the Field Landman to ensure that XTO's interest is properly recorded in the county records. Once the recording is complete, the Field Landman picks up the recorded instrument(s) from the courthouse and mails them back to XTO.

An XTO Landman then merges the recorded documents into the lease packet, signs his approval, and obtains additional management approval, if required by the amount of the bonus to be paid to the land owner. The XTO Landman then internally routes the lease packet to the XTO's Land Obligations Office, where a check is issued.

The check is routed via interoffice mail to the Land Department and back to the issuing XTO Landman. From there, it is sent to the oil and gas owner via certified mail.

XTO Landmen have access to, and use, computer systems specific to XTO, which XTO uses to map oil and gas leases, track costs related to oil and gas bonus payments, and access oil and gas leases.

Beginning in or about January 2009, and ending in or about January 2011, **Fisackerly** devised and operated a scheme and artifice to defraud XTO and to obtain money and property by making false material statements and representations.

As an XTO Landman, **Fisackerly** used his knowledge of XTO's OGL process, his access to previously approved OGLs and reports, XTO computer systems, Harrison County, West Virginia's online Document Inquiry public records database, and his knowledge of XTO's oil and gas interests in West Virginia to generate bogus OGLs. He used existing OGLs and/or existing properties in areas of West Virginia where XTO had property interests. He altered/falsified the existing information to generate the bogus documents.

On January 15, 2009, **Fisackerly** selected a valid, existing XTO OGL and lease packet from legitimate landowner, J.G. He altered the XTO OGL and lease packet related to J.G.'s property to show falsely that another individual, E.C., was the landowner. Fisackerly prepared and organized the false OGL documentation under E.C.'s name, and routed the lease packet for management approval. Once approved, XTO issued a bonus check in the amount of $180,402.50 to E.C., which **Fisackerly** received from the XTO Land Department. On May 22, 2009, the XTO bonus check was deposited into a First

National Bank account ending in xxxx0254, which was controlled by E.C. After the check was deposited, E.C. wrote two personal checks to **Fisackerly** from E.C.'s First National Bank account, totaling $130,000. One check was in the amount of $40,000, dated June 2, 2009, and the other was in the amount of $90,000, dated June 5, 2009. Both E.C. checks were deposited into **Fisackerly's** Bank of America account ending in xxxx0504. E.C. kept the remaining money.

In furtherance of the scheme to defraud XTO, on September 30, 2010, **Fisackerly** also created a sham company called Parallel Interests, LLC. Using LegalZoom, an online service that helps customers create legal documents, **Fisackerly** created a limited liability company in West Virginia, listing himself as the 100 percent member. In the formation questionnaire, he stated the reason for creating the company was for mineral interests. LegalZoom sent paperwork by private or commercial carrier, that is, Federal Express, to **Fisacklery** that included the Articles of Incorporation for Parallel Interests, LLC, and the Operating Agreement from Los Angeles, California to Fort Worth, Texas.

To further the scheme, on December 21, 2010, **Fisackerly** opened a Bank of America bank account ending in xxxx8177, in Fort Worth, Texas, which listed Parallel Interests, LLC, on the signature card and named **Fisackerly** as the only signer on the account.

**Fisackerly** created false OGLs and lease packets in the name of Paul Hinkle, President of Parallel Interests, LLC, and executed the documents with a forged notary stamp. **Fisackerly** created fraudulent deeds and Harrison County Clerk reference numbers for supporting documentation. **Fisackerly** provided a nonexistent Post Office

Box as the mailing address for the bonus checks. **Fisackerly** organized the fraudulent documentation and approved the order of payments. He then obtained additional management approvals and routed the lease packets to XTO's Land Department, where bonus checks for Parallel Interests, LLC were issued. From there, the bonus checks were routed back to **Fisackerly**. He then deposited them into the Parallel Interests Bank of America account ending in xxxx8177, which he controlled.

**Fisackerly** engaged in approximately nine fraudulent transactions during the course of the scheme, causing XTO to issue checks totaling $1,005,131 made payable to E.C. or Parallel Interests, LLC.

Specifically, on or about September 30, 2010, in the Fort Worth Division of the Northern District of Texas, defendant **Steven Ernest Fisackerly**, for the purpose of executing and attempting to execute the above scheme and artifice to defraud and to obtain money and property by means of materially false representations, knowingly caused to be sent and delivered through a private interstate carrier, that is, Federal Express, from LegalZoom in Los Angeles, California to Fort Worth, Texas, paperwork related to the creation of Parallel Interests, LLC, a sham company created in furtherance of the scheme to defraud.

AGREED AND STIPULATED on this 27th day of May, 2015.

Steven E. Fisackerly
Defendant

Tim Evans
Counsel for Defendant

Factual Resume – Page 6